**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LA-KEBBIA WILSON, et al., | CASE NO. CV F 09-0887 LJO SMS |
| Plaintiffs, | **ORDER ON DEFENDANTS' MOTION TO DISMISS** |
| vs. | (Doc. 9.) |
| CITY OF FRESNO, et al, | |
| Defendants. | |

**INTRODUCTION**

Defendants City of Fresno ("City") and four City planning department officials seek to dismiss plaintiffs La-Kebbia Wilson ("Ms. Wilson") and Teri McCada's ("Ms. McCada's") employment discrimination, harassment and retaliation claims as lacking necessary elements and time barred. Ms. Wilson and Ms. McCada (collectively "plaintiffs") respond that defendants "mischaracterize[] the nature of Plaintiffs' claims" and that plaintiffs' challenged claims are viable. This Court considered defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the October 7, 2009 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court DISMISSES plaintiffs' challenged claims.[1]

---

[1] In their reply papers, defendants withdrew their challenge to one of Ms. McCada's claims. This Court will not address defendants' withdrawn challenge.

# BACKGROUND[2]

## The Parties

Ms. Wilson is black and a neighborhood standards specialist with the City's Planning and Development Department ("Department"). Ms. McCada is white and has served as a code enforcement specialist with the Department and City Public Utilities Department ("PUD").

Defendant Nick Yovino ("Mr. Yovino") is the Department's director. Defendant Jerry Bishop ("Mr. Bishop") is the Department's assistant director. Defendant Matthew Lopez is the manager of the Department's Code Enforcement Division. Defendant Barbara Miller ("Ms. Miller") is the City's housing supervisor.[3]

The Department oversees City development, including land use planning, permit issuance, building plan check and inspection, and code enforcement. The Department's Code Enforcement Division enforces housing, zoning and public nuisance ordinances.

## Plaintiffs' Department Employment

Since 2004, Ms. Wilson has conducted commercial and residential zoning inspections as a neighborhood standards specialist.

During 2004-2008 as a Department code enforcement specialist, Ms. McCada enforced housing and public nuisance ordinances and was required to drive and walk neighborhoods. As a PUD code enforcement specialist since September 2008, Ms. McCada drives to identify impediments to City street sweeping.

## Administrative Proceedings

On September 15, 2006, Ms. Wilson filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") to allege harassment and racial and gender discrimination by the City. EEOC issued an April 9, 2008 right to sue notice.

On May 13, 2008, Ms. Wilson filed another discrimination charge with EEOC to allege City

---

[2] The factual recitation is derived generally from plaintiffs' complaint ("complaint"), the target of defendants' challenges.

[3] The City, Mr. Yovino, Mr. Bishop, Mr. Lopez and Ms. Miller will be referred to collectively as "defendants."

2

retaliation from her prior complaints of discrimination and harassment and ongoing disparate treatment. EEOC issued a February 24, 2009 right to sue notice.

On June 11, 2008, Ms. McCada filed a discrimination charge with EEOC and the California Department of Fair Employment and Housing ("DFEH") to allege City discrimination and retaliation because Ms. McCada participated in an EEO investigation. DFEH issued a June 12, 2008 right to sue notice.

**Ms. Wilson's Alleged Discrimination And Retaliation**

During 2004-2006, Ms. Wilson's direct supervisor Larry Rader ("Mr. Rader") harassed and discriminated against Ms. Wilson based on her race and gender. Mr. Rader held Ms. Wilson to a different, more onerous standard than other employees, threatened her employment status, misrepresented her work performance, and was racially derogatory to her.

During early 2006, Ms. McCada reported to the then code enforcement manager Ruben Diaz ("Mr. Diaz") her concerns that Mr. Rader harassed and discriminated against Ms. Wilson.

Ms. Wilson's work environment became increasingly hostile and in June 2006, she was hospitalized and took medical leave due to severe stress until returning to work in June 2007.

Ms. Wilson discussed her discrimination and harassment during a June 21, 2007 meeting with Mr. Bishop, Mr. Diaz, a Department manager and representatives from the City's human resources and attorney offices. Ms. Wilson advised that EEOC would interview witnesses and was informed that the City had investigated to respond to the EEOC. Ms. Wilson accuses the City of seeking "to investigate matters beyond the scope of the subject events and circumstances," including "activities outside of work unrelated to any discrimination or harassment."

After Ms. Wilson's June 2007 return to work, Ms. Wilson was told that she needed to check in and out with a supervisor or manager when she left or returned to the office although similarly situated employees were not required to do so.

During August 2007, Ms. Wilson was "placed under" Ms. Miller who subjected Ms. Wilson to "greater scrutiny and supervision than other employees." On August 22, 2007, Ms. Miller obtained Mr. Diaz' signature to a letter of understanding which Ms. Miller prepared based on "false information." The letter was retracted after Ms. Wilson produced a corroborating witness as to the letter's falsity.

Also during August 2007, Ms. Wilson was the only employee prohibited from field work pursuant to a policy requiring steel-toed boots although other similarly situated employees were not required to wear steel-toed boots in the field.

Ms. Miller assigned Ms. Wilson the oldest available vehicle and gave more reliable transportation to temporary employees.

In December 2007, Ms. Miller blocked Ms. Wilson from exiting the front door near the receptionist's desk of the code enforcement division.

During February to June 2008, the City deviated from its policies and procedures to further retaliate against Ms. Wilson by imposing discipline using false, misleading and incomplete information.

In March and May 2008, Mr. Lopez reprimanded Ms. Wilson for insubordination without following the City's progressive discipline policy. The May 2008 reprimand intentionally omitted relevant information known to Mr. Lopez and was not intended to reform behavior but to create a disciplinary record against Ms. Wilson.

Ms. Wilson has been subject to different supervision than other similarly situated employees and singled out for coaching sessions as preliminary discipline.

During her employment, Ms. Wilson has heard and has been subjected to "insensitive remarks, stereotypical comments, and disparate treatment on the basis of race."

### Ms. McCada's Alleged Discrimination And Retaliation

During her Department employment, Ms. McCada heard "disparaging" remarks regarding blacks and observed Ms. Wilson being treated "differently than other similarly situated employees" who were not black.

Ms. McCada discussed with, and reported and objected to, management statements and circumstances which she believed were discriminatory or racially hostile.

In July 2007 and March 2008, Ms. McCada was questioned regarding Ms. Wilson's treatment and corroborated Ms. Wilson's claims of harassment and racial and gender discrimination. Ms. McCada gave a statement to the City about Ms. Wilson's treatment by Mr. Rader, Howard Lacy and Jerry Schubert and which Ms. McCada found as harassment or different from that experienced by similarly situated employees.

1    In November 2007, Ms. McCada "came under" new manager Mr. Lopez who "targeted" Ms.
2    McCada "due to her voicing complaints of disparate treatment" of plaintiffs and "started compiling
3    information to use" against Ms. McCada.
4    During February to June 2008, Mr. Lopez initiated four disciplinary actions against Ms. McCada
5    and recommended her transfer out of the Department. Ms. McCada appears to claim that Mr. Lopez did
6    not follow "the City's policy of progressive discipline and made false statements regarding the same."
7    Mr. Yovino and Mr. Bishop encouraged Mr. Lopez' action against Ms. McCada, were aware of
8    the disparate treatment of plaintiffs, and "ratified the same."

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion Standards

11   Plaintiffs filed their complaint on May 19, 2009 to allege six discrimination, harassment and
12   retaliation claims, three of which defendants raise F.R.Civ.P. 12(b)(6) challenges as lacking necessary
13   elements or time barred. The complaint seeks to recover for plaintiffs' emotional distress and "economic
14   injury in connection with the loss of compensation, promotions, training and opportunities." This Court
15   will address below the claims and challenges.
16   F.R.Civ.P. 8 requires a plaintiff to "plead a short and plain statement of the elements of his or
17   her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima
18   facie case." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).
19   A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set
20   forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception
21   of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not
22   whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to
23   support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*
24   *Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where
25   there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a
26   cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling*
27   *v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).
28   In resolving a F.R.Civ.P. 12(b)(6) motion, the court must: (1) construe the complaint in the light

most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-1965 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.
>
> . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (Citation omitted.)

Defendants further challenge one of Ms. Wilson's claims as time barred.

A limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982). A F.R.Civ.P. 12(b)(6)

1  motion to dismiss may raise the limitations defense when the statute's running is apparent on the
2  complaint's face. *Jablon*, 614 F.2d at 682. If the limitations defense does not appear on the complaint's
3  face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a
4  motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg.*
5  *Corp.*, 576 F.2d 697 (6th Cir. 1978). If the limitations defense is not apparent on the complaint's face
6  and the motion to dismiss is not accompanied by acceptable affidavits, an appropriate summary
7  judgment motion may be employed. *Jablon*, 614 F.2d at 682.

8  With these standards in mind, this Court turns to defendants' challenges to plaintiffs' claims.

### Ms. McCada's Section 1983 Retaliation Claim

10  The complaint alleges a (sixth) 42 U.S.C. § 1983 ("section 1983") retaliation claim for Ms.
11  McCada that Mr. Yovino, Mr. Bishop and Mr. Lopez "used and/or allowed official policies, procedures
12  and/or practices to retaliate against Plaintiff McCada on the basis of her association with and support
13  of Plaintiff Wilson in violation of the Fourteenth Amendment."

14  Defendants characterize the claim to allege denial of equal protection and attack the claim's
15  failure to identify Ms. McCada's protected class status and to establish an *Olech* class of one to invoke
16  an equal protection claim. Plaintiffs appear to respond that the complaint invokes an equal protection
17  claim in that "Defendants treated Plaintiff McCada differently than other individuals, i.e., her co-
18  employees."

*Equal Protection*

20  "Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person
21  acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the
22  claimant of some right, privilege, or immunity protected by the Constitution or laws of the United
23  States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

24  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for
25  vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807,
26  811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)).
27  Section 1983 and other federal civil rights statutes address liability "in favor of persons who are
28  deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*,

7

435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689 (1979). Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright*, 510 U.S. at 271, 114 S.Ct. at 811.

"The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985). The "purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445, 43 S.Ct. 190 (1923).

A section 1983 plaintiff alleging an equal protection violation must prove that: (1) the defendants treated plaintiff differently from others similarly situated; (2) the unequal treatment was based on an impermissible classification; (3) the defendants acted with discriminatory intent in applying this classification; and (4) plaintiff suffered injury as a result of the discriminatory classification. *Moua v. City of Chico*, 324 F.Supp.2d 1132, 1137 (E.D. Cal. 2004); *see Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (a section 1983 plaintiff alleging denial of equal protection "must show that the defendants acted with an intent or purpose to discriminate against plaintiff based on membership in a protected class."); *Van Pool v. City and County of San Francisco*, 752 F.Supp. 915, 927 (N.D.Cal.1990) (section 1983 plaintiff must prove purposeful discrimination by demonstrating that he "receiv[ed] different treatment from that received by others similarly situated," and that the treatment complained of was under color of state law).

### *Class Of One*

Defendants note the absence of allegations that Ms. McCada was denied equal protection based on her membership in a protected class. Defendants surmise that the complaint attempts to allege a "class of one" equal protection claim for Ms. McCada in that she was subject to retaliation for

8

supporting Ms. Wilson.

Plaintiffs respond: "The bases for the discrimination here was [sic] Plaintiff's [sic] McCada's association with Plaintiff Wilson, and Plaintiff McCada's participation in the investigation. . . . She is bringing this action because she was treated differently from the other employees who did not take sides with an African-American female who was suffering unlawful discrimination and harassment." Plaintiffs claim that Ms. McCada "suffered adverse employment action because she took sides with an African-American."

Equal protection claims may be brought by a "'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000). Defendants attribute to the Ninth Circuit Court of Appeals to "circumscribe" *Olech*'s class of one equal protection due to potential to require federal court review of "almost every executive and administrative decision made by state or local actors." In *Engquist v. Oregon Dept. of Agriculture*, 478 F.3d 985, 995-996 (9th Cir. 2007), *cert. denied,* 128 S.Ct. 977, 169 L.Ed.2d 800 (2008), the Ninth Circuit explained:

> In addition to significantly altering traditional personnel practices, applying the class-of-one theory to public employment would also generate a flood of new cases, requiring the federal courts to decide whether any public employee was fired for an arbitrary reason or a rational one. *See Jennings*, 383 F.3d at 1211. The theory would apply not only to discharges, but also to other employment actions, such as promotions, disciplinary actions, and decisions about pay, benefits and transfers. Contrary to the Supreme Court's admonition, federal courts would be required to "review the multitude of personnel decisions that are made daily by public agencies." *Bishop*, 426 U.S. at 349, 96 S.Ct. 2074.
>
> Finally, we believe that *Olech* is too slender a reed on which to base such a transformation of public employment law. "It seems unlikely that the Supreme Court intended such a dramatic result in its per curiam opinion in *Olech*." *Campagna v. Mass. Dep't of Envtl. Prot.*, 206 F.Supp.2d 120, 127 (D.Mass.2002), *aff'd*, 334 F.3d 150 (1st Cir.2003). Accordingly, we hold that the class-of-one theory of equal protection is inapplicable to decisions made by public employers with regard to their employees.

Defendants argue that the "need for judicial intervention in the name of equal protection under these facts is nonexistent."

The gist of Ms. McCada's claim is that Mr. Yovino, Mr. Bishop and Mr. Lopez transferred her to PUD to retaliate against her support for Ms. Wilson. *Olech* does not appear to support such a class

of one claim. Plaintiffs offer nothing to demonstrate that *Olech* supports a class of one claim which Ms. McCada seeks to pursue.

### *Olech Elements*

Defendants further contend that Ms. McCada's section 1983 retaliation claim fails to satisfy *Olech* elements.

To succeed on a "class of one" equal protection claim, a plaintiff bears the burden to prove that: (1) he/she has been intentionally treated differently than others; and (2) there is no rational basis for the difference in treatment. *Thorton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005); *Seariver Mar. Fin. Holdings Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002).

### Similarity Requirement

As to the different treatment element, a plaintiff must demonstrate that "the level of similarity between plaintiff and the persons with whom they compare themselves must be extremely high." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2nd Cir. 2005). To succeed, plaintiffs "must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects." *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002). The similarity requirement requires a plaintiff to show:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of mistake.

*Neilson*, 409 F.3d at 105; *see Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (plaintiff "must show that the parties with whom he seeks to be compared have engaged in the same activity vis-a-vis the government entity without such distinguishing or mitigating circumstances would render the comparison in utile.")

Defendants correctly note the absence of facts to support "differential treatment compared to others similarly situated." The section 1983 retaliation claim merely alleges that Mr. Yovino, Mr. Bishop and Mr. Lopez retaliated against Ms. McCada based on "her association with and support of Plaintiff Wilson." The claim fails to distinguish Ms. McCada's treatment from similarly situated individuals. The claim does not allege that others who supported Ms. Wilson or other blacks or

1  minorities were not disciplined or singled out. The complaint alleges no facts to support prima facie
2  identity. Plaintiffs are unable to manufacture a protected class or class of one in that coworkers were
3  not treated as McCada was.

### Rational Basis

To prevail on the rational basis element, a "class of one" plaintiff must "negative any reasonably conceivable state of facts that could provide a rational basis for the classification." *Lauth*, 424 F.3d 631, 634 (7th Cir. 2005) (quoting *Board of Trustees v. Garrett*, 531 U.S. 356, 367, 121 S.Ct. 955 (2001)). The "rational-basis inquiry is a very lenient one, and specifically 'attach[es no] legal significance to the timing' of legislative or municipal action." *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1156 (9th Cir. 2004) (quoting *Bannum, Inc. v. City of Fort Lauderdale*, 157 F.3d 819, 822, n. 3 (11th Cir. 1998)). "Governmental action only fails rational basis scrutiny if no sound reason for the action can be hypothesized." *Garrett*, 531 U.S. at 367, 121 S.Ct. 955.

In *Bizzarro v. Miranda*, 394 F.3d 82, 88-89 (2nd Cir. 2005), the Second Circuit Court of Appeals explained:

> The pertinent question in a constitutional claim is not whether the defendants correctly understood the rules they were enforcing. *Olech* does not empower federal courts to review government actions for correctness. Rather, an *Olech*-type equal protection claim focuses on whether the official's conduct was rationally related to the accomplishment of the work of their agency.

A decision "can be considered irrational" only when the decision-maker "acts with no legitimate reason for its decision." *Harlen v. Associates v. Incorporate Village of Mineola*, 273 F.3d 494, 500 (2nd Cir. 2001) (quotation marks and citation omitted). "[D]ecisions that are imprudent, ill-advised, or even incorrect may still be rational." *Rossi v. West Haven Bd. of Ed.*, 359 F.Supp.2d 178, 183 (D. Conn. 2005).

Defendants note the absence of sufficient allegations "that there was no rational basis in the alleged difference in treatment." Defendants are correct. The complaint fails to address an absence of rational basis for Ms. McCada's treatment.

In sum, plaintiffs offer no support for Ms. McCada's section 1983 equal protection/retaliation claim arising from alleged different treatment due to support of a black coworker. Plaintiffs appear to extrapolate Ms. Wilson's alleged racial and gender discrimination into an equal protection claim for Ms.

McCada. This Court lacks the legal grounds to do so to warrant dismissal of Ms. McCada's section 1983 retaliation claim. *See Bernheim v. Litt*, 79 F.3d 318, 323 (2nd Cir. 1996) ("Although claims of retaliation are commonly brought under the First Amendment . . . and may also be brought under Title VII . . ., we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination."); *Boyd v. Illinois State Police*, 284 F.3d 888, 898 (7th Cir. 2004) ("the right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause").

### Ms. Wilson's Section 1983 Discrimination Claim

The complaint alleges a (third) section 1983 discrimination claim for Ms. Wilson that the City "used and/or allowed official policies, procedures and/or practices to discriminate against Plaintiff Wilson on the basis of her race, in violation of the Fourteenth Amendment."

#### *Monell Liability*

Defendants argue that the complaint's conclusory allegations fail to establish the City's *Monell* liability for Ms. Wilson's section 1983 discrimination claim. Plaintiffs respond that defendants lack legal authority to support defendants' claim of insufficient facts for *Monell* liability.

A local government unit may not be held liable for the acts of its employees under a respondeat superior theory. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct. 275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989). "Federal case law has long barred respondeat superior liability against state actors in suits brought under 42 U.S.C. § 1983." *Fed. of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996). Claimants suing state actors under 42 U.S.C. § 1983 "must establish that their alleged injury was the result of a 'policy or custom' of that state actor." *African American Contractors*, 96 F.3d at 1215.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2018. The local government unit "itself must cause the constitutional deprivation." *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345 (1993). Because liability of a local governmental unit must rest on its actions, not the actions of its employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged

constitutional violation was the product of a policy or custom of the local governmental unit. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-480, 106 S.Ct. 1292 (1986). To maintain a civil rights claim against a local government, a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation). *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

An actionable policy or custom is demonstrated by:

1. An "express policy that, when enforced, causes a constitutional deprivation," *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994);

2. A "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a 'custom or usage' with the force of law," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915 (1988) (plurality opinion); or

3. Constitutional injury caused by a person with "final policymaking authority," *Praprotnik*, 485 U.S. at 123, 108 S.Ct. 915.

"The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police. Dept.*, 130 F.3d 162, 167 (5th Cir. 1997). "[E]xistence of a policy, without more, is insufficient to trigger local government liability." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). However, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur*, 475 U.S. 469, 480, 106 S.Ct. 1292 (1986).

"More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur*, 475 U.S. at 481, 106 S.Ct. 1292. Local government liability is based on "whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." *McMillan v. Monroe County, Ala.*, 520 U.S. 781, 785, 117 S.Ct. 1734 (1997).

To impose *Monell* liability, a plaintiff "must identify the policy, connect the policy to the city

13

itself and show that the particular injury was incurred because of the execution of that policy. Plaintiff must, of course, prove that his injury was caused by city policy." *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984).

Defendants note that Ms. Wilson rests *Monell* liability on a threadbare claim that the City "used and/or allowed official policies, procedures and/or practices to discriminate against Plaintiff Wilson."

Ms. Wilson's section 1983 discrimination claim is conclusory and fails to establish the City's *Monell* liability. The complaint identifies no policy with particularity to connect the City's execution of such policy to Ms. Wilson's alleged Fourteenth Amendment deprivation. The complaint does not reference a source (express policy, widespread practice or final policy maker) to impose *Monell* liability. The complaint fails to allege even the most basic facts to support *Monell* liability for Ms. Wilson's section 1983 discrimination claim. Plaintiffs offer no meaningful opposition to dismissal of Ms. Wilson's section 1983 discrimination claim against the City.

### *Limitations Defense*

Defendants further contend that Ms. Wilson's section 1983 discrimination claim is barred by the applicable two-year limitations period. Alternatively, defendants seek to limit the claim to matters arising after May 19, 2007, two years prior to the filing of this action.

Plaintiffs note that Ms. Wilson seeks "relief for the acts that occurred after her return to work in June of 2007" and for "acts persisting through June of 2008, which is well within the statutory period."

Federal civil rights statutes have no independent limitations period. *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000); *Taylor v. Regents of the Univ. of Cal.*, 993 F.2d 710, 711 (9th Cir. 1993) (California's statute of limitations for personal injury actions governs claims brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1985)*; McDougal v. County of Imperial*, 942 F.2d 668, 673-674 (9th Cir. 1991) ("suits under § 1985(3) are also best characterized as personal injury actions and are governed by the same statute of limitations as actions under § 1983"); *Abreu v. Ramirez*, 284 F.Supp.2d 1250, 1257 (C.D. Cal. 2003). The applicable limitations period is determined by borrowing the forum state's limitations period for personal injuries. *Johnson*, 207 F.3d at 653; *Abreu*, 284 F.Supp.2d at 1257. Section 1983 and related federal civil rights claims "are best characterized as personal injury actions."

*Wilson v. Garcia*, 471 U.S. 261, 280, 105 S.Ct. 1938 (1985).

On January 1, 2003, California Code of Civil Procedure section 335.1 ("section 335.1")[4] took effect to extend the prior limitations period for personal injury actions (and correspondingly to federal civil rights claims, *see Wilson*, 471 U.S. at 271-272, 105 S.Ct. 1938; *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716 (1975); *Krug v. Imbrodino*, 896 F.2d 395, 396-397 (9th Cir. 1990)), from one year under former California Code of Civil Procedure section 340(3) to two years. *Abreu*, 284 F.Supp.2d at 1255; *see* Cal. Senate Bill 688 (Burton), Stats. 2002, ch. 448, §3. Applying California law, federal civil rights claims which arise in California are generally barred if not brought within two years if they accrued after January 1, 2003. *See Johnson*, 421 U.S. 454, 95 S.Ct. 1716; *Elliot v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994); *Krug*, 896 F.2d at 396-397; *see also Taylor*, 993 F.2d at 711.

Federal law "determines when a federal cause of action accrues, despite the fact that state law determines the relevant statute of limitations." *Wetzel v. Lou Ehlers Cadillac Group*, 189 F.3d 1160, 1163 (9th Cir. 1999); *Elliott*, 25 F.3d at 801-802. Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Tworivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). "Generally, the statute of limitations begins to run when a potential plaintiff knows or has reason to know of the asserted injury." *De Anza Properties X, Ltd. v. County of Santa Cruz*, 936 F.2d 1084, 1086 (9th Cir. 1991). The California Supreme Court has explained:

> Possession of "presumptive" as well as "actual" knowledge will commence the running of the statute. The applicable principle has been expressed as follows: "when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation . . . the statute commences to run."

*Sanchez v. South Hoover Hospital,* 18 Cal.3d 93, 101, 132 Cal.Rptr. 657 (1976) (citations omitted).

"The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Abramson v. Univ. of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979) (addressing sex discrimination claim).

---

[4] Section 335.1 provides: "Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."

1    Defendants note that Ms. Wilson pursues a section 1983 claim "premised on differential
2 treatment" which "took place repeatedly between 2004 and 2006."
3    To support her section 1983 discrimination claim, Ms. Wilson appears to rely on discrete events
4 prior to May 19, 2007. The complaint alleges:
5    1.   Mr. Rader's harassment and discrimination during 2004-2006;
6    2.   Ms. Wilson's increasingly hostile work environment and June 2006 hospitalization with
7         a June 2007 return to work; and
8    3.   A September 15, 2006 EEOC discrimination charge.
9    The limitations defense further warrants dismissal to the extent the section 1983 discrimination
10 claim arises from alleged wrongs which occurred prior to May 19, 2007 (two years prior to the filing of
11 this action). Claims based on such discrimination are time barred. Plaintiffs fail to substantiate a
12 "continuing violation theory" in that the alleged wrongs are distinct. *See RK Ventures, Inc. v. City of
13 Seattle*, 307 F.3d 1045, 1061 (9th Cir. 2002) ("the statute of limitations runs separately from each discrete
14 act"); *Thompson v. City of Shasta Lake*, 314 F.Supp.2d 1017, 1027 (E.D. Cal. 2004) ("allegedly
15 discriminatory acts are time-barred even if they enjoy a close relation to other discrete acts falling within
16 the statute of limitations").

17    **Ms. Wilson's Section 1981 Racial Discrimination, Harassment And Retaliation Claim**

18    The complaint alleges a (second) section 1981 claim against Ms. Miller, Mr. Lopez and the City
19 that the "events and circumstances were discriminatory in that other similarly situated employees in the
20 Department were not subject to the such conduct" and "that such acts were motivated at least in part by
21 a desire to retaliate against Wilson."
22    Defendants seek to dismiss Ms. Wilson's section 1981 claim against the City for failure to satisfy
23 *Monell* requirements.
24    As to section 1981(c), Congress intended to "import . . . the traditional 'policy or custom
25 requirement set forth in *Monell*." *African American Contractors*, 96 F.3d at 1215. In *African American
26 Contractors*, 96 F.3d at 1215, the Ninth Circuit concluded:
27    In our view, the language of § 1981(c), considered in the context of the long history of
      federal case law precluding respondeat superior liability for state actors, is conclusive
28    evidence that the amendment to 42 U.S.C. § 1981 preserves the 'policy or custom'

requirement in suits against state actors.

Defendants fault Ms. Wilson's section 1981 claim against the City for the same reasons discussed in connection with her section 1983 claim against the City.

Defendants are correct. Ms. Wilson's section 1981 claim against the City is conclusory and fails to establish the City's *Monell* liability. The complaint identifies no policy with particularity to connect the City's execution of such policy to alleged unlawful employment practices. The complaint does not reference a source (express policy, widespread practice or final policy maker) to impose *Monell* liability. The complaint fails to allege even the most basic facts to support *Monell* liability for Ms. Wilson's section 1981 claim. Plaintiffs offer no meaningful opposition to dismissal of Ms. Wilson's section 1981 claim against the City.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES with prejudice Ms. Wilson's (second) section 1981 racial discrimination, harassment and retaliation claim against the City only;
2. DISMISSES with prejudice Ms. Wilson's (third) section 1983 discrimination claim;
3. DISMISSES with prejudice Ms. McCada's (sixth) section 1983 retaliation claim;
4. DENIES plaintiffs' request for leave to amend in that the dismissed claim's deficiencies cannot be cured and plaintiffs offer nothing to demonstrate that the deficiencies can be cured;
5. ORDERS defendants, no later than October 9, 2009, to file and serve an answer to plaintiffs' remaining (first) and (fourth) retaliation claims against the City and (second) and (fifth) section 1981 claims against Mr. Yovino, Mr. Bishop, Mr. Lopez and Ms. Miller.

As such, defendants' alternative F.R.Civ.P. 12(e) and F.R.Civ.P. 12(f) motions are rendered moot.

IT IS SO ORDERED.

Dated:   October 1, 2009            /s/ Lawrence J. O'Neill
                                    UNITED STATES DISTRICT JUDGE