IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA-KEBBIA WILSON, TERRI McCADA, | CASE NO. CV F 09-0887 LJO SMS |
| Plaintiffs, | **ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**, **OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |
| vs. | |
| CITY OF FRESNO, | |
| Defendant. / | |

By notice filed on February 17, 2011, the City of Fresno moves for summary judgment, or in the alternative, partial summary judgment against plaintiff Terri McCada. Plaintiff filed an opposition to the motion on March 14, 2011. The City filed its reply on March 24, 2011. The motion was taken under submission pursuant to Local Rule 230(g) and the hearing vacated. Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following order.

**FACTUAL BACKGROUND**

Plaintiff Terri McCada ("McCada") alleges retaliation against the City of Fresno in violation of the Fair Employment and Housing Act ("FEHA"). She alleges that she was retaliated against for assisting co-plaintiff La-Kebbia Wilson providing information to the EEOC relating to a racial and gender discrimination and harassment complaint filed by Wilson. The City contends that McCada's retaliation claims must fail because McCada did not appeal the Civil Service Board's decision regarding her claim of retaliation. City argues McCada is therefore barred by failure to exhaust judicial remedies and collateral estoppel.

**A.     Overview of McCada and the Wilson Complaint**

McCada began her employment with the City as a Code Enforcement Specialist in March 2004. In September 2008, McCada was transferred to the Department of Public Utilities in the Community Sanitation Division. (Doc. 49, Opposition p.6.) McCada alleges that she was transferred in retaliation for assisting in an EEOC investigation on a claim by another city worker, plaintiff La-Kebbia Wilson. McCada claims that the transfer, along with other reprimands, were retaliatory.

Co-plaintiff Wilson filed an EEOC complaint for racial and gender discrimination against another employee of the City on July 15, 2006. (Doc. 49-2, Response to Facts no. 28.) On April 14, 2008, Wilson filed an amended EEOC charge alleging retaliation and identified McCada as a co-worker who was similarly situated. (Doc. 49, Opposition p. 2-3.) McCada alleges she was interviewed in connection with the Wilson complaint by the EEOC. Specifically, in July 2007 and again in March 2008, McCada was questioned regarding her knowledge of the treatment of Wilson. (Doc. 2, Complaint ¶22; Doc. 49, Opposition p.3.) McCada also was interviewed by an independent investigator hired by the City to investigate the Wilson complaint. McCada alleges she provided information corroborating Wilson's claims of racial and gender discrimination and harassment. (Doc. 2, Complaint ¶22.)

**B.     Written Reprimands to McCada**

McCada was reprimanded by the City for certain conduct. In February 2008, a written reprimand was issued to McCada for her taking photographs of employees at their work stations without their permission. (Doc. 49, Opposition p. 4.) The employees complained about the photographs which McCada took to show "co-workers having coffee at each other's cubicles." (Doc. 49, Opposition p.4.)

On March 14, 2008, another written reprimand was issued to McCada. McCada had posted the prior written reprimand on the outside of her cubicle, "calling out" the complaining parties. (Doc. 30 Moving paper p.5; Doc. 49, Opposition p. 5.) McCada hand-wrote on the reprimand names of the employees who had reported her, and as a result, the City issued the March 14, 2008 reprimand.

In March/April 2008, a co-worker of McCada filed a harassment complaint against McCada. The City began an investigation of the harassment complaint.

In June 2008, another written reprimand was issued for certain email correspondence, which included tone and quality that the City felt were inappropriate.

1  From the investigation of the harassment complaint filed against McCada by the co-worker, the City found a myriad of conduct-related issues regarding McCada's interaction with the public, co-workers and supervisors. The harassment complaint investigation concluded with a recommendation to relocate McCada from her workspace in the Code Enforcement unit. The City issued the "Order of Suspension and Notice of Transfer," which stated in relevant part:

> "Under the provisions of Section 3-281 and 3-286(a) of the Fresno Municipal Code, you are hereby notified of the imposition of disciplinary action against you in the form of a Twenty (20) Working Days or One Hundred Sixty (160) Working Hours Suspension . . . Additionally, upon your return, you will be transferred to another Division and/or Department pursuant to Section 3-261 of the Fresno Municipal Code.

(Doc. 32, Chavez Decl., Exh. A.) The Order of Suspension and Notice of Transfer to McCada on July 17, 2008, referenced the three written reprimands. (Doc. 49-2, Response Fact no. 2.)

**C.      Hearing Before the Civil Service Board**

McCada appealed the Order of Suspension and Notice of Transfer to the Civil Service Board. (Doc. 49-2, Response Fact no. 2.) The Fresno City Charter, §§908-909, establishes the Civil Service Board ("CSB") and its powers, which include conducting hearings regarding disciplinary matters of City employees. (Doc. 35, Request for Judicial Notice, Exh. B.) In her appeal, McCada stated that she had not violated the Fresno Municipal Code and that the City "imposed Disciplinary action is in retaliation for [McCada's] exercise of her lawfully protected rights relating to terms and conditions of employment . . ." (Doc. 32, Chavez Decl. Exh. B ("Employee Appeal").)

McCada admits that at the CSB hearing, she presented argument and/or evidence that she was continually retaliated against for being a witness to a complaint of racial discrimination by a co-worker.[1] (See Doc. 49-2, Response Fact no. 13.) McCada was represented by counsel at the hearing, had an opportunity to subpoena witnesses and present evidence. (Doc. 49-2, Response Fact no. 8-10.) The hearing lasted approximately three days. The CSB issued written findings and an order which upheld the Order of Suspension and Notice of Transfer. (Doc. 35, Request for Judicial Notice, Exh. B; Doc.

---

[1] While plaintiff admits that the CSB hearing included presentation of evidence or argument as to retaliation, she notes the limitation of presenting the issue. Plaintiff notes that "evidence was limited by virtue of access through the City and the City failed and refused to provide documents of some of its allegations." (Doc. 49-2, Response Facts no. 13.) This argument is addressed *infra*.

3

49-2, Response Fact no. 13.)  McCada did not file a petition for Writ of Administrative Mandamus to appeal the ruling.  (Doc. 49-2, Response Fact no. 17.)

McCada filed her complaint in this action on May 19, 2009.  The complaint alleges in pertinent part:

> "54.  Defendants City's removal of Plaintiff McCada from her work station and ultimately her position within the Department, and the manner in which it occurred and her being ostracized from co-workers were in part motivated by a desire to retaliate for McCada's corroboration of Plaintiff Wilson's complaints . . .
>
> 56.  That Defendant City continues to retaliate against plaintiff McCada in its selective supervision of her work and its restricting her from being in portions of City Hall thereby limiting her free association with other employees and from being in public places.
>
> 57.  Defendant City's discipline of Plaintiff McCada, as well as its selective supervision and restrictions upon Plaintiff McCada, was and is motivated in part by attitudes hostile to plaintiff McCada's association with Plaintiff Wilson as an African-American; that Defendant City was responsible for such acts and decision and ratifies all of the acts necessary to acheive the same."

## ANALYSIS AND DISCUSSION

**A.   Summary Judgment/Adjudication Standards**

F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim."  On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56 ( c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970). The evidence of the party opposing summary judgment/adjudication is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its

4

ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56( c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

**B.    Exhaustion of Judicial Remedies**

City contends that plaintiff failed to exhaust her judicial remedies of seeking a writ of mandate from a Superior Court. After McCada's proceeding before the Civil Service Board, she failed to seek

5

a writ of mandate. City contends plaintiff's FEHA claim thus is barred because she failed to exhaust judicial remedies and she is also precluded under the doctrine of collateral estoppel.

### 1. Preclusive Effect of Administrative Judicial Proceedings

Under California law, a failure to challenge an agency's administrative decision rendered in its judicial or quasi-judicial capacity entitles that decision to have preclusive effect in all subsequent actions. Before pursuing a claim for damages, a plaintiff first must have the agency decision reviewed and set aside by the superior court in an administrative mandamus proceeding. *Johnson v. City of Loma Linda*, 24 Cal.4th 61, 65, 69-71, 99 Cal.Rptr.2d 316, 319 (2000); *Westlake Community Hosp. v. Superior Court*, 17 Cal.3d 465, 482-485 (1976) (defendants were entitled to summary judgment against a doctor whose staff privileges were revoked by a hospital pursuant to a quasi-judicial proceeding, where the affidavits established that plaintiff did not challenge the revocation through a mandamus action prior to instituting the damage action). Where an administrative decision is quasi-judicial in nature (notice and hearing provided) and is subject to judicial review, such review must be sought. *Johnson*, 24 Cal.4th at 65. "(U)nless a party to a quasi-judicial proceeding challenges the agency's adverse findings made in that proceeding, by means of a mandate action in superior court, those findings are binding in later civil actions." *Id.*

The binding effect of administrative judicial proceedings applies to FEHA claims. In *Johnson v. City of Loma Linda*, the plaintiff was an assistant city manager who was laid off when his position was eliminated. He filed a grievance, which the City's personnel board rejected, finding that the City had not violated any discrimination laws in discharging him, and that his job had been eliminated for economic reasons. The personnel board's decision was upheld by the city council. Plaintiff filed a discrimination claim with Department of Fair Employment and Housing ("DFEH") alleging his dismissal was in retaliation for opposing sexual harassment. He was issued a right-to-sue letter and filed a complaint in superior court, alleging he was discharged in retaliation for opposing discriminatory practices in violation of FEHA. The court granted summary judgment in favor of the City on plaintiff's FEHA claims on the grounds that plaintiff was bound by the administrative finding that he was dismissed for economic and not discriminatory reasons. *Johnson*, 24 Cal.4th at 67. The Supreme Court upheld the judgment in favor of the City, concluding that the state agency's findings had a binding effect on claims

brought under FEHA. *Johnson*, 24 Cal.4th at 75. "We conclude that when, as here, a public employee pursues administrative civil service remedies, receives an adverse finding, and fails to have the finding set aside through judicial review procedures, the adverse finding is binding on discrimination claims under the FEHA." *Johnson*, 24 Cal.4th at 76.

"The doctrine of collateral estoppel bars the relitigating of issues which were previously resolved in an administrative hearing by an agency acting in a judicial capacity." *Risam v. County of Los Angeles* 99 Cal.App.4th 412, 419, 121 Cal.Rptr.2d 267, 272 (2002). In *Risam,* a county employee alleged that the county had demoted her in retaliation for opposing discriminatory practices. She filed a grievance with the civil service commission, which held a multiday hearing. The civil service commission ruled that she had failed to present evidence sufficient to prove retaliation. She did not seek a petition for a writ of administrative mandamus. The employee thereafter filed a complaint with DFEH, and upon obtaining a right-to-sue letter, filed a complaint for violation of the FEHA. The trial court granted summary judgment. The Court of Appeal affirmed, holding that under the doctrine of exhaustion of judicial remedies, the administrative decision barred the civil action. The administrative decision resulted in a final decision on the retaliatory demotion, which plaintiff did not judicially challenge by an administrative writ, and "that determination is now final and binding on her." *Id.* at 423. *See also Murray v. Alaska Airlines, Inc.*, 50 Cal.4th 860, 867, 114 Cal.Rptr.3d 241, 245 (2010) (wrongful termination claim barred by collateral estoppel: "It is settled that the doctrine of collateral estoppel or issue preclusion is applicable to final decisions of administrative agencies acting in a judicial or quasi-judicial capacity."); *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1033-1034, fn.3 (9th Cir.1994) (failure to challenge, by proceeding in mandate, the civil service commission's finding that city properly terminated civil service employee precluded later civil rights claim under 42 U.S.C. §1983; res judicata and collateral estoppel principles afforded preclusive effect to commission's findings). Thus, judicial or quasi-judicial administrative findings are binding and preclusive as to FEHA claims.

Here, McCada had a contested evidentiary hearing before the City's Civil Service Board. It is undisputed that witnesses were presented and that evidence was taken over a three day period. It is undisputed that one of the issues litigated at the administrative hearing was McCada's belief she was retaliated against for supporting plaintiff Wilson's discrimination claims. (See Doc. 49-2, Response to

7

Facts no. 13 (admitting, in part, that at the hearing McCada presented evidence she was continually retaliated against.).) McCada presented evidence and argued that the reprimands were the result of her cooperation with plaintiff Wilson's EEOC complaint, among other grounds. (See CSB Findings p. 30 ("[McCada] contends that she has been singled out because she gave a statement in support of Ms. Wilson's discrimination claim sometime in early 2008 and that her suspension was the result of her statement on behalf of Ms. Wilson.") Despite her evidence and arguments, the CSB issued findings which addressed whether McCada had been retaliated against for her support of the co-worker's discrimination claim.

> The Board finds that, contrary to [McCada's] contention, none of [McCada's] immediate supervisors, the division manager, or the department head were aware that [McCada] gave a statement in favor of another employee's discrimination complaint against the City.
>
> The Board finds that [McCada's complaint] of being constantly singled out and discriminated against again and again to be without merit.
>
> The Board finds that [McCada] had not been singled out and/or scrutinized by the department in any manner whatsoever.

(CSB Findings p. 33-35.)

Indeed, the CSB upheld the City's written reprimands and the suspension of McCada: "The Board finds that there is just cause for the suspension for [McCada]." (CSB Findings p. 35.)

The Board made specific findings as to the merits of the reprimands and suspension:

> The Board finds that [McCada] disrupted the workplace by taking photos on February 8, 2008, and particularly disrupted Pam Madewell and Cheryl Cox by taking unauthorized photos of them in their workstations.
>
> The Board finds that [McCada] showed continued incompetence, continued failure to follow reasonable rules and regulations, and continued failure to reasonably cooperate with fellow employees in her email of March 6, 2008, directed to Barbara Miller.
>
> The Board finds that [McCada] in posting her reprimand was in direct defiance on the second posting and knew that the posting would cause disruption in the workplace.
>
> The Board finds that [McCada] by posting her written reprimand and placing Madewell and Cox's names thereon intended to cause Madewell and Cox discomfort and embarrassment.

(CSB Findings p. 34-35.)

Here, as in *Johnson* and *Risam*, McCada raised the issue of retaliatory discipline at the administrative hearing before the CSB. The administrative decision resulted in a final decision on the retaliatory claim. McCada did not challenge the CSB's decision by a petition for a writ of mandate. Thus, the decision of the CSB is final and binding on her. See *Johnson*, 24 Cal.4th at 71 ("Refusing to give binding effect to the findings of administrative agencies in quasi-judicial proceedings would . . . undermine the efficacy of such proceedings, rendering them in many cases little more than rehearsals for litigation.")

### 2. McCada's Cases are Distinguishable

McCada cites other cases and argues that she is not barred by judicial remedies, citing *Schifando v. City of Los Angeles*, 31 Cal.4th 1074 (2003) and *George v. Cal. Unemployment Ins. App. Bd.*, 179 Cal.App.4th 1475 (2009).

*Schifando v. City of Los Angeles* held civil service employees have a choice between pursuing internal city administrative remedies or the FEHA administrative remedies. *Id.* at 1088. In *Schifando*, the city employee brought an action against the city alleging employment discrimination in violation of the FEHA, exhausted his FEHA administrative remedies and obtained a right-to-sue letter. The city demurrered on the grounds that the employee failed to exhaust the internal administrative remedies provided by the City's Charter before filing suit. The court stated that a city employee was not required to pursue remedies under both the City Charter and through the DFEH. After exploring the Legislative purpose of the FEHA, the Court concluded that employees are able to choose between pursuing their claims under the FEHA, or other statutes. An aggrieved employee does not have to exhaust their remedies under a city charter contemporaneous with or before filing a claim with the DFEH. *Id*. at 1089.

The *Schifando* court distinguished, but confirmed the holding in *Johnson v. City of Loma Linda*. *Schifando* stated *Johnson* held that when employees have availed themselves of the administrative remedies a local statute affords, and have received an adverse quasi-judicial finding, that finding is binding on subsequent discrimination claims under the FEHA unless set aside through a timely mandamus petition. "*Johnson* ... ensures that employees who choose to utilize internal procedures are not given a second 'bite of the procedural apple.'" *Schifando*, 31 Cal.4th at 1090. Where a plaintiff elects to exhaust the remedies the city offers, and thereafter fails to exhaust his judicial remedies, the

city agency's findings are binding on his subsequent FEHA claims. *Schifando*, 31 Cal.4th at 1090-91, citing *Johnson*, 24 Cal.4th at 72.

*George v. California Unemployment Ins. Appeals Bd.* does not assist plaintiff. In *George v. California Unemployment Ins. Appeals Bd.*, 179 Cal.App.4th 1475, 1487,102 Cal.Rptr.3d 431 (2009), a civil service employee challenged disciplinary actions imposed upon her with the State Personnel Board. At the Board hearing, she did not argue that the disciplinary actions were retaliatory, or challenge the disciplinary actions on the ground that they were discriminatory. The State Personnel Board revoked one of the employee's suspension and reduced the others, which left open the question of whether she was treated differently from other employees. Because some of the disciplinary actions were not upheld and the employee did not challenge the actions as retaliatory, the court held that the employee was not bound by collateral estoppel. The administrative proceedings did not find on the elements necessary for the retaliation claim, and thus, the Court held that the administrative finding did not preclude the entire retaliation cause of action. *George*, 179 Cal.App.4th at 1487-1488.

Here, McCada pursued the City's administrative remedies. She appealed the written reprimands to the CSB. McCada argued before the CSB that the reprimands were retaliatory. McCada raised the issue that the reprimands were given as retaliation for her participation with the EEOC investigation. Unlike in *George*, the CSB upheld the City's written reprimands and specifically ruled against McCada on those issues. Thus, the issues were raised and decided in the CSB hearing. McCada did not challenge the CSB's findings through mandamus. The CSB's findings are binding on McCada. Accordingly, the CSB findings bar McCada's retaliation claim based upon the same conduct.

### 3. Lack of Discovery in the CSB proceeding

McCada argues that the CSB proceeding, while quasi-judicial in nature, is no substitute for a civil lawsuit that provides the employee with the ability to compel discovery. (Doc. 49, Opposition p. 11-12.) McCada argues that she did not have an adequate opportunity to litigate her issues because the lack of discovery available in the administrative process. She was denied discovery in advance of the hearing. She argues there was no mutual exchange of witness lists, no deposition process, and no opportunity to compel witnesses or documents.

City argues that McCada fails to provide any legal authority that formal discovery is required in

administrative proceedings. City also argues that McCada failed to utilize other available methods under the Government Code, she has not pointed to any document which would have altered the CSB's decision, and McCada could have raised the issue of a fair trial in a mandamus petition. See Code Civ.Proc. §1094.5.

The Court agrees with the City's position. McCada has not provided any authority that the lack of formal discovery procedures renders that administrative process unfair or procedurally deficient. She has not cited any authority that the discovery methods embodied in the Code of Civil Procedure should be incorporated into administrative proceedings. McCada has failed to cite any authority that a failure to incorporate the formal civil procedure discovery methods into the administrative process renders the administrative proceeding unfair. This Court declines to adopt such a far-reaching proposition through judicially created law. That is a Legislative function.

Indeed, plaintiff had alternative means for obtaining documents. For instance, the California Public Records Act (Gov.Code, § 6250 et seq.), enacted by the Legislature in 1968, provides for this "access via a scheme to inspect public records maintained by state and local agencies." *Sutter's Place v. Superior Court*, 161 Cal.App.4th 1370, 1378, 75 Cal.Rptr.3d 9, 15 (2008). Public records must be disclosed unless they meet one of the statutory exceptions. *International Federation of Professional and Technical Engineers, Local 21, AFL-CIO v. Superior Court,* 42 Cal.4th 319, 328-329, 64 Cal.Rptr.3d 693, 697 (2007). Further the CSB's procedures permit subpoenaing of witnesses. (See Doc. 34, CSB Rules and Regulations, Art. 6.) Plaintiff could have subpoenaed witness, and in fact she had a witness testify on her behalf.[2]

Administrative proceedings which are judicial in nature have characteristics of "testimony under oath, the opportunity to call witnesses and introduce evidence, and a formal record of the hearing." *McDonald v. Antelope Valley Community College Dist.*, 45 Cal.4th 88, 113, 84 Cal.Rptr.3d 734, 752 (2008). A proceeding which has these characteristics is sufficient to impose res judicata or collateral

---

[2] McCada does not argue that she was without the capability to subpoena witnesses. She argues, instead, that she had to pre-submit the witness names to the Personnel Division. She also argues that the "reality of the employment relationship" made it difficult to talk to witnesses before hand, while the City was not so constrained. (Doc. 49, Opposition p.12.) Nonetheless, the procedures for discovery of information and subpoenaing witnesses were available. Whether the available methods were "more difficult" does not render the administrative proceeding unfair, under the facts presented in this case.

estoppel.

Here, as shown above, the administrative proceeding had the characteristics of a judicial proceedings. McCada's testimony was taken under oath, she had the opportunity to cross examine witnesses, call her own witness, compel witnesses to attend and introduce evidence. The proceeding was formal and a written decision was issued.

Further, McCada had the mechanism to challenge any unfairness she deemed existed. A proceeding seeking a writ of mandate could have addressed any due process considerations that McCada felt existed at the administrative hearing. Code Civ. Proc. §1094.5 provides for a review of the administrative proceeding to determine whether the proceeding was fair. "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." Cal.Code Civ. Proc. §1094.5 (emphasis added); *Breakzone Billiards v. City of Torrance*, 81 Cal.App.4th 1205, 97 Cal.Rptr.2d 467 (2000) (While Code of Civil Procedure mandates that a fair hearing be conducted, it does not automatically follow that due process clause of federal constitution is always implicated). Thus, McCada could have challenged the fairness of the administrative process in the mandamus proceeding.

### 4. Continuing Retaliatory Conduct

McCada argues that she is not barred because she alleges continuing retaliatory conduct. McCada argues that the City continues to engage in retaliatory conduct against her, citing to the Complaint at paragraph 56. (See Doc. 49, Opposition p. 11, citing ¶56.) Plaintiff argues that the terms and conditions of her employment are different, she is working outside of her classification, and she continues to be treated differently from co-workers.

City argues that McCada failed to exhaust administrative remedies with the DFEH on the "continued retaliation" claims. City argues McCada received a right-to-sue letter on June 11, 2008 and that the purported continued retaliation occurred in a different City department, 17 months after the DFEH had issued the right-to-sue letter.

The transfer to the new Department is not a "continuing" violation. One of the subjects of the CSB hearing was McCada's transfer to the new position. The Order of Suspension informed McCada

that she "would be transferred to another Division and/or department." (Request for Judicial Notice, Exh. A, Order of Suspension.) The CSB decided the issues raised in the Order of Suspension. Thus, the CSB had before it whether she was retaliated against by being transferred to another Department.

The scope of any lawsuit is limited to the claims charged in or "related" to allegations in the corresponding DFEH complaint and growing out of the investigation of those allegations. *Martin v. Lockheed Missiles & Space Co., Inc.*, 29 Cal.App.4th 1718, 1729, 35 Cal.Rptr.2d 181, 186 (1994). An employee is not required to return to the DFEH to report subsequent acts of discrimination. *Okoli v. Lockheed Technical Operations Co.*, 36 Cal.App.4th 1607, 1614–1615, 43 Cal.Rptr.2d 57, 62 (1995). The plaintiff may pursue acts which are "like or related" to the acts of discrimination that occurred after the charge: "if an investigation of what was charged in the EEOC would necessarily uncover other incidents that were not charged, the latter incidents could be included in a subsequent action." In *Okoli*, the plaintiff's DFEH complaint alleged one specific instance of discrimination, denial of a promotion, and two specific instances of derogatory comments, both committed by the same supervisor. *Id.* at 1609-1610. The plaintiff's complaint in the lawsuit also included an additional claim, not mentioned in his DFEH complaint, that the plaintiff had been subjected to other adverse employment actions by *a different* supervisor in retaliation against him for filing the original DFEH complaint. The court held that the plaintiff had not exhausted his administrative remedies with regard to the retaliation claim by a different supervisor and reversed a jury verdict. *Id.* at 1617.

Similarly here, McCada alleges retaliation by a different supervisor and after her transfer to a new department. She argues that her new supervisor, John Rogers in the Department of Public Utilities, retaliated against her. In some instances, aggrieved employees may seek recovery for alleged acts of misconduct occurring after the filing of an administrative charge when such acts are like or reasonably related to the allegations in the charge. *Okoli v. Lockheed Technical Operations Co.*, 36 Cal.App.4th 1607, 43 Cal.Rptr.2d 57. However, plaintiff has failed to submit evidence that this claim is like or related to the claims for which she exhausted her administrative remedies with the DFEH. Her right-to-sue letter was issued by the DFEH on June 11, 2008, and the conduct McCada raises as continued retaliation occurred in May-December 2010. (See Doc. 49, Opposition p. 7-8.) The alleged retaliatory conduct is by a different supervisor, in a different Department in the City for a different reason. There

is no showing of any relationship with the prior alleged retaliatory conduct.[3] She fails to present evidence that this claim of retaliation is like or reasonably related to the prior retaliation claim. Indeed, McCada does not argue that the prior DFEH complaint is related to these new claims of retaliation. Accordingly, McCada has not raised an issue of fact that she has exhausted her administrative remedies for the claim of retaliation by supervisor John Rogers.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the motion for summary judgment in favor of defendant City of Fresno and against plaintiff Terri McCada.

IT IS SO ORDERED.

**Dated:   March 29, 2011**                    /s/ Lawrence J. O'Neill
                                               UNITED STATES DISTRICT JUDGE

---

[3] Indeed, McCada fails to show that the new supervisor had any knowledge that had once given a statement on behalf of a EEOC complaining party. "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." *Morgan v. Regents of Univ. of Calif.*, 88 Cal.App.4th 52, 69–70, 105 Cal.Rptr.2d 652, 666 (2000). Plaintiff does not present any evidence that John Rogers had knowledge that she had given the statement to the EEOC. Rather, plaintiff presents evidence that there was a dispute with Rogers about her performance evaluation in October 2009 and December 2010. (Doc. 49-4, McCada Decl. ¶¶18-22.)